OPINION
{¶ 1} Maudie L. Jones was charged by indictment with carrying a concealed weapon, a fourth degree felony, and trafficking in marijuana, a fifth degree felony. After the trial court *Page 2 
overruled Jones' motion to suppress evidence, Jones entered a plea of no contest to carrying a concealed weapon, and the trafficking in marijuana charge was dismissed. Jones was sentenced to five years community control.
 {¶ 2} A notice of appeal was filed on behalf of Jones and counsel was appointed to prosecute the appeal. On August 13, 2007, appointed appellate counsel filed an Anders brief pursuant to Anders v.California (1967), 386 U.S. 738, wherein counsel presented one potential assignment of error but, after analyzing the facts and the law, concluded that the assignment of error had no arguable merit and that there were no other potentially meritorious issues for appellate review. By order of August 20, 2007, we informed Jones of the filing of theAnders brief by his appointed appellate counsel, informed Jones of the significance of the Anders brief, and invited Jones to file a pro se brief within sixty days of August 20, 2007, with pro se assignments of error. To date, Jones has filed nothing with this court.
 {¶ 3} As his single potential assignment of error, appointed appellate counsel states that "appellant was denied his right to freedom from unreasonable searches and seizures."
 I {¶ 4} The facts found by and the legal conclusions of the trial court in overruling Jones' motion to suppress are as follows:
 {¶ 5} "On June 26, 2006, Officer Michael Wolpert, an officer with nine years experience with the Dayton Police Department, had been assigned to neighborhood policing under what had been referred to as the Orion Project. The Orion Project is a project set up by the City of Dayton to add additional policing in high-crime area neighborhoods. In this case, Officer Wolpert was patrolling the area of Niagra, Victor, Wheatley, and Richmond Avenues in *Page 3 
Dayton, Montgomery County, Ohio. He testified that these areas where [sic] high-crime areas and that he had made numerous arrests for drugs, prostitution and weapons violations. As a matter of fact, there had been a shooting in the area the night before.
 {¶ 6} "Officer Wolpert was in his marked cruiser with his partner, Officer Beavers, at approximately 9:24 p.m. when he observed a group of people standing in the street and the sidewalk on Fountain Avenue. He also observed a woman sitting on the hood of a vehicle with the group of approximately six males. He testified that the lady sitting on the vehicle observed the police cruiser and appeared to be hiding something under her leg. He pulled up to the group of people and asked the young lady to step away from the vehicle, she did, and he did not observe anything illegal under her leg. At that time he and his partner made a determination to fill out `field investigation cards' on the individuals at the scene. He asked the individuals whether they had identification and Defendant, Maudie Jones, informed him that he did not have any identification on him. The officer testified that Mr. Jones was very cooperative and he asked him to step over to the cruiser so he could verify his identification by the use of his social security number. The Defendant provided his social security number and Officer Wolpert ran the social security number through his on-board computer. The computer came back that there were three outstanding warrants for the Defendant's arrest out of the Dayton Municipal Court. Officer Wolpert explained to Mr. Jones that there were outstanding warrants and placed him under arrest. At that time Mr. Jones volunteered that he had two guns and some marijuana on his person. Officer Wolpert asked the Defendant what he said, and the Defendant repeated that he had two guns and marijuana on his person. The Defendant was searched and two guns were taken off of his person. Officer Wolpert indicated that he never interrogated the Defendant, but *Page 4 
on the way to the police station the Defendant voluntarily stated that he had just purchased the guns two hours before the arrest and had purchased them because of his own safety, there having been a recent shooting in the neighborhood.
 {¶ 7} "On cross-examination Officer Wolpert testified that the individuals which were questioned as to their identity were free to leave and walk away at any time. This included the Defendant. In addition, he testified that there were no threats made to the Defendant and he cooperated with the officer and voluntarily walked over to the police cruiser and provided his social security number.
 {¶ 8} "Detective Baker was called to the witness stand to testify and at that time defense counsel stipulated the admission of State's Exhibit #1 which was the Miranda rights form and the Defendant's statement given to Detective Baker being State's Exhibit #2. The parties stipulated that the statement made by the Defendant was voluntarily made and he had been properly advised of his Miranda rights, and as such, the Statement was legally obtained.
 {¶ 9} "* * *
 {¶ 10} "In reviewing the matter before the Court it is clear under the facts presented that the encounter between Officer Wolpert and the Defendant is categorized as a consensual encounter. The officer approached the Defendant on a public street or sidewalk and engaged him in conversation requesting information. The officer testifying [sic] that the Defendant was free to leave and not answer any questions. Further, the testimony indicates that even though there were two officers present, Officer Wolpert and his partner, his partner was not involved in any conversations with the Defendant but was busying himself with the other individuals at the scene obtaining identification information from them. On cross-examination the officer testified *Page 5 
that there was no display of weapons, that neither he nor his partner made any movement towards their weapon or the holster. In addition the officer did not touch the Defendant but the Defendant voluntarily cooperated with the officer in providing the requested identification information. There was no evidence before the Court that either officer used any language or tone of voice compelling response from the Defendant nor blocked his path.
 {¶ 11} "* * *
 {¶ 12} "In considering the Defendant's motion in regard to statements, it is clear that the statement made by the Defendant to Officer Wolpert was not in response to any interrogation but a voluntary statement made by the Defendant, and as such, does not require the Miranda warnings. In addition, the parties have stipulated that the statement given to detective Baker was made voluntarily and after proper Miranda warnings."
 II {¶ 13} While not conceding that the initial stop of Jones was a consensual encounter, appointed appellate counsel provides an excellent summary of the case law of this district to the effect that, when a defendant is arrested pursuant to outstanding warrants, what is seized from the defendant's person as a result of his arrest pursuant to those warrants is lawfully seized notwithstanding that the initial encounter may have been unjustified. The Anders brief of appointed appellate counsel appears to be limited to the weapons and marijuana seized from Jones and does not embrace his statements to the police officers.
 {¶ 14} From our review of the transcript of the suppression hearing, we are well satisfied that the trial court's statement of facts is borne out by the transcript and that the trial court's conclusion that the initial encounter with Jones was a consensual one is correct. We thus *Page 6 
agree that Jones was lawfully arrested pursuant to outstanding warrants for his arrest, that his initial statement to Officer Wolpert was not the result of custodial interrogation, and that his written statement given to Detective Baker was made voluntarily and after proper warnings.
 {¶ 15} Accordingly, we agree with the assessment of appointed appellate counsel that there was no legitimate basis to suppress either Jones' statements or the evidence seized from his person.
 {¶ 16} Furthermore, pursuant to our responsibilities underAnders, we have made a complete review of the entire record in this case and conclude as did appointed appellate counsel that there are no arguably meritorious issues for review, and that this appeal is entirely frivolous.
 {¶ 17} Accordingly, the judgment of conviction will be affirmed.
 GRADY, J. and DONOVAN, J., concur. *Page 1